**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **THOMAS AND SANDRA** | : | |
| **HOPKINS h/w** | : | |
| **Plaintiffs** | : | |
| | : | |
| | : | |
| **vs.** | : | **CIVIL ACTION** |
| | : | |
| **HARTFORD FIRE** | : | |
| **INSURANCE COMPANY** | : | |
| **Defendant** | : | **NO.    02-CV-3207** |

_____

## <u>PLAINTIFFS' MOTION IN LIMINE TO PRECLUDE EXPERT TESTIMONY OF ALEX PROFKA</u>

Plaintiffs, by counsel, hereby moves that the expert opinion testimony of Alex Profka be precluded, and avers in support thereof as follows:

### <u>A. FACTS</u>

1.    This case involves, inter alia, defendant's conclusions that the fire loss at the plaintiffs'/ insureds' premises located at 47 Hickory Hill Road, White Haven, Pennsylvania was not a fortuitous loss and that coverage for the fire loss is excluded under the policy and common law. Hartford's denial letter of May 10, 2002 is attached hereto as Exhibit A.

2.    Hartford claims it conducted an investigation into the fire loss at 47 Hickory Hill Road, White Haven, Pennsylvania on August 9, 2001 and on the basis of the information gathered denied the claim citing the Concealment or Fraud exclusion and the Intentional Loss exclusion to the policy. See Exhibit A. In essence, claiming Mr. Hopkins intentionally set fire to his house.

3.      Hartford plans to offer the expert opinion testimony of Mr. Alex Profka of Bieber & Associates, who produced an initial written report on August 10, 2001 and a follow up written report on June 5, 2003. See Profka's reports attached hereto as Exhibit B and C. His reports and deposition show he will testify, if allowed, that the fire is being termed an incendiary fire, a fire that was intentionally set in the closet area, on the floor, in combustible materials and that due to the blistering of the floor that a flammable liquid was used. Profka admits, however, there was no evidence of a flammable liquid detected at the scene. See Profka reports, page 4, attached hereto as Exhibits B and C.

4.      A central issue in this case, therefore, is whether Hartford has met its burden of proving that these cited exclusions apply and Mr. Hopkins, in fact, intentionally set fire to his house. Mr. Hopkins has consistently maintained he did not know how the fire started.

5.      Contrary to the defendant's conclusions, there was no evidence that Mr. Hopkins intentionally set fire to his house regardless of Hartford's investigative results. Plaintiff has not intentionally set fire to his house and Hartford has not met its burden of proving an incendiary fire.

## B. STANDARDS

6.      The relevant test for expert testimony is that of Federal Rule of Evidence 702, which provides as follows:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

FRE Rule 702 (emphasis added).

7.    Pursuant to FRE 702, it is the role of the trial judge to act as a "gatekeeper" to ensure that any and all expert testimony or evidence is not only relevant, but also reliable. Daubert v. Merrell Dow Pharmaceuticals, Inc. 509 U.S. 579, 589 (1993).

8.    It is the burden of the proponent of the evidence to show "by a preponderance of proof" that the testimony is qualified, i.e. the expert is qualified, the methodology used is reliable and is based on good grounds, and the research fits the facts of the case. Oddi v. Ford Motor Company 234 F.3d 136, 144 E d Cit. 2000), cert. denied 532 U.S. 921 (2001) (citing FRE C Rule 104(a) and Daubert 509 U.S. at 593).

9.    Pursuant to Daubert the Third Circuit, in In re Paoli R.R. Yard PCB Litig. 35 F.3d 717 (3d Cir. 1994), specified that the Court must determine the following:

>    (1) Qualifications - whether the expert is qualified to speak with authority on a particular subject or issue;
>
>    (2) Reliability - whether the expert's methodology is sound and whether his or her opinion is supported by 'good grounds'; and
>
>    (3) Fit - whether there is a relevant 'connection between the scientific research or test result to be presented and particular disputed factual issues in this case'

Yarchak v. Trek Bicycle Corp. 208 F.Supp.2d 470, 494 (D.N.J. 2002) (Judge Irenas) (citing Paoli 35 F.3d at 741-43).

## C. PROPOSED OPINION: Causation of Fire

10.    Under the Daubert and Paoli tests, Mr. Profka's proposed testimony regarding the cause of the fire is not admissible because the above requirements are not met, as shown in the following paragraphs.

11.     Mr. Profka's proposed conclusions express, in whole, his claims that the fire was intentionally set by Mr. Hopkins in the closet and due to the blistering of the floor tiles a flammable liquid was used.

12.     Mr. Profka's conclusions relate in whole or in part to causation of the fire and are based on common expert opinions.

13.     The plaintiffs arranged for Mr. Profka's report and deposition transcript to be reviewed by Mr. Thomas D. Schneiders, C.F.E.I. of Lawrence J. Dove Associates. Mr. Schneiders also inspected the property. His report and relevant deposition testimony is attached hereto as Exhibits D and E.  Mr. Schneiders is a well qualified expert on Fire cause and origin. His curriculum vitae is attached hereto as Exhibit D. Mr. Schneider's is the president of Lawrence J. Dove Associates, a nationally known forensic consulting firm specializing in fire and explosion investigations of industrial, commercial and residential sites. In fact, Mr. Schneiders has been hired by the defendant in the past for forensic consulting purposes.

14.     Mr. Schneider's review of Mr. Profka's expert report and testimony, together with Mr. Profka's own admissions and other evidence cited herein, show that Mr. Profka's opinion testimony should be precluded. See Schneiders expert report Exhibit D and relevant deposition testimony of Schneiders attached as Exhibit E.

15.     Considering the facts of record cited by Mr. Schneiders, the evidence shows that Mr. Profka's methodology is not generally accepted in the scientific community, and his conclusions are not based on "good grounds".

**Second <u>Paoli</u> Requirment: Methodology**
**Mr. Profka's causation methodology is unsound and his conclusions are not supported by "Good Grounds"**

16.    Mr. Profka's proposed opinion that the fire was intentionally set in the closet area, on the floor, in combustible materials and that due to the blistering of the floor that a flammable liquid was used, fails to meet the second requirement of the test set forth by the Third Circuit in <u>Paoli</u>, based on <u>Daubert</u>, *i.e. the methodology used to reach the conclusion must be reliable and the conclusions must be supported by good grounds*, because his conclusion is inconsistent with his own test results and he did not conduct industry accepted tests and follow industry standards before determining the cause of the fire.

17.    In <u>Paoli</u>, the Third Circuit prescribed factors to be considered in a <u>Daubert</u> inquiry into the expert's methodology and conclusions, including:

> (1) whether a method consists of a testable hypothesis; (2) whether the method. has been subject to peer review; (3) the known or potential rate of error; (4) the existence and maintenance of standards controlling the technique's operation; (5) whether the method is generally accepted; (6) the relationship of the technique to methods which have been established to be reliable; (7) the qualifications of the expert witness testifying based on the methodology; and (8) non— judicial uses to which the method has been put.

<u>In re Paoli</u>, 35 F.3d at 742, n. 8.

18.    Mr. Profka's "evaluation" abjectly fails to meet the <u>Paoli</u> tests for several reasons, as follows:

(a)      Mr. Profka failed to employ adequate scientific methods to examine the floor for flammable liquids. This renders his method unreliable and his conclusions that a flammable liquid was intentionally used to start the fire not based on good grounds. See (d) below. In this case, his study fails <u>Paoli</u> tests, 1,2,3,4, 5 and 6.

(b)      Mr. Profka's opinion is also not reliable because he is not honest in reporting the facts. A good example of this is expressed in Mr. Profka's follow-up report. In his over zealous desire to prove credibility, Mr. Profka is quick to characterizes Mr. Hopkins as a liar.

Mr. Profka's follow-up report to Mr. Schneiders' report states:

> The report by Mr. Schneiders discusses the fact that the insured, Mr. Hopkins, was a smoker and was, therefore, not truthful with this investigator, or during his deposition, that he did not place any smoking material into the storage area, where this fire had its inception. The type of fire that occurred in the storage area, next to the water heater, as described by this investigator, was a fire that was intentionally set. The tiles that were blistered in the area were not caused by anything other than a flammable liquid, in the opinion of this investigator.

Motion Ex. C, p.15 ¶2.

In reality, Mr. Hopkins clearly disclosed to Mr. Profka during the interview that he was a smoker and that he was smoking in the bedroom near the closet on the day of the fire.

| Mr. Profka: | Q. | Do you smoke cigarettes? |
| Mr. Hopkins: | A. | Yes |
| | Q. | Were you smoking that day? |
| | A. | Oh Yeah. In the closet no. But in my room, I was sitting on the side of the bed, probably I think I left a cup and an ashtray there.  The [cut] had water in it and that's where I would put the cigarette out, put the matches in there. |

Motion Ex. B and C, attachments incorporated into Profka reports, Hopkins interview September 4, 2001 p. 11.

Mr. Profka failed to mention in either report that Mr. Hopkins was a smoker and smoking in the house on the day of the fire.

Also, Mr. Schneider's report does not infer that Mr. Hopkins was untruthful in his testimony. The report simply expresses that Mr. Hopkins' statements are not uncommon of a homeowner/smoker who house is damaged by fire. Mr. Schnieders report states:

> 11. the known circumstances of this fire and its discovery are explainable as a result of an accidental fire due to the inadvertent discarding of cigarette embers/materials in the closet area of fire origin;

> 12. Mr. Hopkins recorded interview (September 4.2001) and statement under oath (February 5, 2002) including information that he was not in the closet on the day of the fire, that he did not smoke in the closet. . . are explainable and (based on my years of experience with these type of fires) not atypical statements of a homeowner/smoker whose home has been damaged by fire; and

> 13. the accidental discarding of smoking materials is consistent with the known facts of this fire and its discovery, and provides a credible determination regarding the cause of this fire in conformance with NFPA 921.

Motion Ex., D, Schneiders report, p. 6

In explaining why Mr. Hopkins was so insistent that he didn't smoke in the closet and inadvertently drop embers that started the fire, Mr. Schnieders determined, through experience, that Mr. Hopkins didn't realize he was smoking in the closet:

MacBride:           Q.      Even if it meant the
                                   insurance company declining their claim?

Schnieders:        A.      I think that he doesn't –
                                   till this day, I would guess that he
                                   doesn't believe that he started that fire.
                                   but I know what a smoking fire looks like
                                   and this is a smoking fire.

Motion Ex.E, Schnieders N.T 89:13-17

Mr. Profka's hyperbole and intentional exclusion of relevant information suggests his study was not controlled and non-biased and therefore his conclusions are not based on good grounds. This fails the Paoli tests 1, 4 and 5.

(c)    Mr. Profka formed his opinions based upon assumed, rather than documented and known facts, thereby rendering his methodology unreliable. The time-frame references made by the neighbors, Giardina and Babbit, are second-hand anecdotal experiences. Such anecdotal experiences are not a proper basis for a conclusion regarding causation.

Like clinical opinions and case reports, unsupported time-frame references are "not a scientifically reliable basis for a causation opinion." Lennon v.  Norfolk and Western Railway Co. 123 F.Supp.2d 1143,1152 (N.D.Ind. 2000); See generally, Allison v. McGhan Med. Corp. 184 F.3d 1300, 1316 (11th Cir. 1999) ; In re Breast Implant, 11 F.Supp.2d 1217,1230 (D.Colo. 1998); Haggerty v Upjohn Co., 950 F.Supp. 1160, 1164 (S.D. Fla. 1996) ("while case reports may provide anecdotal support, they are not a substitute for scientifically designed and conducted inquiry"). Case reports are universally regarded as unreliable because they lack controls. In re Breast Implant Litigation 11 F.Supp.2d at 1230. The District Court explained:

> Such case reports are not reliable scientific evidence of causation, because they simply describe reported phenomena without comparison to the rate at which the phenomena occur in the general population or in a defined control group; do not isolate and exclude potentially alternative causes; and do not investigate or explain the mechanism of causation.

In re Breast Implant 11 F.Supp.2d at 1231 (quoting Casey v. Ohio Medical Products 877 F.Supp. 1380,1385 (N.D.Cal. 1995) ("while case reports may provide anecdotal support, they are no substitute for a scientifically designed and conducted inquiry").

Mr. Profka stated in his report and at his deposition that he interviewed neighbors, Joseph Babbit and Al Giardiana, and relied on their testimony when forming his opinion that Mr. Hopkins intentionally set the fire. For example:

Ponziano:         Q.    So if I'm characterizing your testimony
                        correctly, the sole reason that you believe this was
                        an intentionally set fire was the fact that there
                        were bubbled tiles on the floor?

Profka:           A.    No
                        Mr. MacBride: Objection. You may answer.
                        THE DEPONENT: That is not the sole reason.
                        That's one of the reasons.

                  Q.    What other - -

                  A.    The time frames. When Mr. Hopkins was
                        there and his vehicle was observed by Mr. Giardina.
                        The fact that the house was found locked by the fire
                        department and secured; they had to force their way
                        in. So that means that when the owner, Mr. Hopkins,
                        left, the house was secured. And they broke the door
                        to get in to fight the fire. The way the fire spread
                        from that location, causing the amount of damage in
                        1 approximately 45 minutes to when the fire was seen.
                        But I'm backing that up, because Mr. Babbit had to go
                        back to his house -- the boy, Joe Babbit. He had to
                        go up to the intersection, which was probably --
                        maybe 40, 50 yards -- and go over to his house, which
                        was up at the T intersection over -- I don't know how
                        far, maybe 100, 200 yards over. Then he had to get
                        his parents or grandparents back over to see the
                        smoke coming out. They called the fire
                        department.
                              So we're looking at maybe 1:45 the car

is still there, 1:15 the first observation of smoke
is -- 2:30, excuse me. My times are wrong.

At 1:45 the vehicle is seen by Mr.
Giardina, Mr. Hopkins' car. 2:30 is when the call is
made to com center that there is a fire. That's Mr.
Babbit. He's walking when he sees the fire, goes
back to the house, grabs his parents or grandparents
to come down -- I'm not sure if it was his parents of
grandparents, I think grandparents -- then they go
back and call the fire in.

So there's maybe a 10 minute, 12
minute time lapse in there before the fire is called
in after it's first observed. So that backs it up to
about a half hour.

So between the time frame, the
blistered tiles, the fire spread that I saw, the
absence of any accidental means of causing the fire,
and the forceable entry made by the fire
department -- you know, all that leads me to the
conclusion that this was an intentionally set fire.

Motion Ex.F. Profka, N.T. 38:18-40-13

Mr. Profka has failed to establish the accuracy and accountability of the neighbors
statements. The time-frame references made by Giardina and Babbit, are second-hand
anecdotal experiences that are not a scientifically reliable basis for a causation opinion.
See e.g., In re Breast Implant Litigation supra (citing Muzzey v. Kerr-McGee Chemical
Corp. 921 F.Supp. 511,519 (N.D.Ill. 1996). In this, Mr. Profka fails Paoli tests 1 and 5.

(d)    Mr. Profka's tests are grossly incomplete.

Mr. Profka looked in the closet saw blistering on the tile floor, performed a
TIF8800 Combustible Gas Detector test, with negative results, and concluded a

flammable liquid was intentionally placed on the floor by Mr. Hopkins and the fire was intentionally set. Mr. Profka came to this conclusion even after admitting he couldn't tell if there was a flammable liquid with the negative test results.

> If I don't catch anything with the
> Hydrocarbon detector I couldn't tell you whether
> there was anything or not.

Motion Ex. F. Profka N.T. 55: 6-8

Mr. Profka also stated in his reports he did not take samples of the floor area for testing due to the negative reading with the Combustible Gas Detector.

Mr. Profka understood the importance of testing the blistered tiles but nevertheless chose not to test the floor.

> Where you can really determine what
> you have in the way of a flammable liquid would be
> like on the tiles that are blistered. Because there
> - -because the evidence is there that the blistering
> has occurred. There's been a high amount of heat
> right at floor level

Motion Ex. F. Profka N.T. 54:16-21

His testing technique to determine whether there was a flammable liquid on the floor is inadequate and contrary to industry standards.

Mr. Schnieders pointed out in his report that, "Mr. Profka misinterpreted the significance of the physical damage (i.e. blistering of the floor titles) which Mr. Profka incorrectly determined was evidence of a deliberate use of flammable liquids". See Schnieders report exhibit D, p. 5, ¶6.

Mr. Schnieders has explained that a more thorough testing of the floor area should have been conducted before concluding that a flammable liquid was there.

MacBride:              Q.     Are there situations where a
                              flammable liquid can be used to start a
                              fire, yet when you examine the scene, all
                              evidence of that has been burned away?

Schneiders:            A.     If you have total
                              destruction. But if I had an area that I
                              thought was blistering and I still had that
                              blistering tile, then it's not burned away.
                              And I would have taken that piece of tile
                              and had it analyzed at a lab and have them
                              tell me that it has flammable liquid in it.
                              That would still be there if the piece was
                              still there.
                              If those tiles were
                              Completely gone, washed away down the
                              Street through fire hoses, yes. But with
                              So much of this scene remaining here, Mr.
                              MacBride, there's a clear indication that
                              there wasn't a flammable liquid in there.
                              He should have taken samples of that into a
                              lab and that would have given you the
                              answer.

          Motion Ex. E, Schneiders, N.T. 72:3-24

Schnieders:            A.     His reading that day was
                              negative. But there's a lot more
                              sophisticated equipment, like a gas
                              spectrophotometry, that he could submit to
                              a laboratory and do it as opposed to -- and
                              that's basically a field test type of
                              thing.

          Motion Ex. E, Schneiders, N.T. 73:6-12

Mr. Profka's failure to employ a more accurate testing procedure and his willingness to disregard his own test results that indicated no presence of a flammable liquid renders his methodology unreliable and his conclusions not based on good grounds. In this, he fails <u>Paoli</u> tests 1, 3, 4 and 5.

(e)     Mr. Profka failed to consider significant data sources. An expert must consider adequate relevant data, relied upon by experts in the field, in rendering a causation conclusion. <u>In re Paoli</u>, 35 F.3d at 746. Exclusion of relevant data is improper. If enough relevant data is not available, the expert should reconsider his methodology. <u>Total Containment, Inc. v  Dayco Products, Inc.</u>, 2001 WL 1167506, *7 (E.D. Pa. 2001).

1,     Failure to consider Mr. Schneiders results and the results of the police and fire departments investigation.

Mr. Profka produced a follow up report after reviewing Mr. Schneiders report. Mr. Schneider, as an expert in this field, considered as significant sources, the findings of the State police department (See incident report Exhibit G), and fire department when rendering his opinion as to the cause of the fire. As pointed out in Mr. Schnieders' report, "the public sector investigation did not determine that the fire was incendiary in nature or deliberately accelerated by human action and the Pennsylvania State Police Corporal Daniel Balleit's official classification for the fire cause is undetermined". See exhibit D, p. 6, ¶¶ 9 & 10.

Mr. Schneiders determined the fire was not intentional and disputed Mr. Profka's findings and conclusions:

Schneiders:                    Further, he [Profka]states on page
                               20, line 5, that in the closet there was a
                               lot of really combustible materials, paper,

cardboard, different things laying on the

floor. That would be an indication that if

you had a flammable liquid fire start in

that area, those light combustibles, the

paper, cardboard, that would be consumed.

Also, on page 41, line 10,

Mr. Hopkins, if it contained any discarded

smoking materials, there would have been a

hotspot into the floor. There was a

hotspot into the floor that Mr. Profka had

missed. This is the spot that burned

through the floor to the basement. He said

I didn't find that.

Motion Ex. E, Schneiders, N.T. 95:3-18

Mr. Profka disregarded Mr. Schneiders findings and also ignored the findings of

the police department and the fire department. In this, he fails Paoli test number 1, 3 & 5.

2.      Failure to perform more accurate tests.

Mr. Profka failed to remove a sample of the title floor for more accurate testing.

Mr. Schneiders points out in both his report and his deposition that more accurate testing

should have been performed on the title floor before concluding the floor contained a

flammable liquid. Without this test it would be improper to conclude there was a

flammable liquid on the floor. In this, he fails Paoli test number 1, 3 and 5.

3.      Refusal to conduct a thorough investigation.

Mr. Profka mentioned in his reports and deposition that no metal or plastic

container was found in the closet or elsewhere. Exhibit B & C, p. 13, ¶2 of reports 1 & 2.

When I went through the debris we're

looking at in 19, I was looking for the remains of

any type of garbage. Soda cans, soup cans, tuna

> cans – any kind of garbage that people would put
> into a garbage or trash receptacle and put into a
> closet. I didn't find any.

Motion Ex. F, Profka N.T. 55:12-17

The absence of a container assisted him in forming his opinion that the fire was intentionally set.

Mr. Schneider's found, during his investigation, after Mr. Profka's investigation, the fire damaged remains of a metal one quart container in the debris removed to the bathroom on the eastern side of the closet area of fire origin. Schneiders report Exhibit D. p.7.

The can was discussed during in Mr. Schneiders deposition and it has been made available to Mr. Profka for examination. Mr. Profka chose not to examine the can and has refused to amend his report to reflect the discovery of this vital piece of evidence. In this, he fails Paoli test number 1, 3 and 5.

Since there was not enough relevant information available to confirm intentional use of flammable liquids and an intentionally set fire, Mr. Profka should have reconsidered his methodology and concluded that the fire was not incendiary in nature.

    4.    Ignoring his own test results which indicated no presence of a flammable liquid.

Mr. Profka refused to consider his own findings that no flammable liquids were discovered at the source of the fire. In this, he fails Paoli test number 1, 3 and 5.

**Third Paoli Requirement: "Fit"**
**Mr. Profka did not apply the principles and methods reliably to the facts of the case**

19.    Mr. Profka's testimony also does not meet the third requirement, i.e. "fit" between the research and the facts of the case.

20.     FRE Rule 702 and <u>Daubert</u> require that the expert "has applied the principles and methods reliably to the facts of the case", i.e. the expert's proffered testimony must "fit" the facts of the case. <u>U.S. v. Velasquez</u> 64 F.3d 844, 850 (3d Cir. 1995) (Virgin Isl.)

21.     "Fitness" relates to whether the testimony assists the trier of fact by being relevant to the issues at hand. <u>In Re Paoli,</u> 35 F.3d at 743. Admissibility thus depends in part upon "the proffered connection between the scientific research or test results to be presented and particular disputed factual issues in the case." <u>Id</u>.

22.     The "material" testimony proffered by Mr. Profka is that the fire is being termed an incendiary fire, a fire that was intentionally set in the closet area, on the floor, in combustible materials and that due to the blistering of the floor that a flammable liquid was used. See Profka reports, Exhibits B and C, p. 4.

Mr. Profka's conclusion of an "absence of any accidental means of causing the fire" (Profka N.T. 40:10-15), does not fit the facts of this case.

23.     While a water heater or electrical wiring malfunction has been ruled out by both Mr. Profka and Mr. Schneiders through the introduction of testing results by Cliff Patton of Patton Forensic Engineering's, other accidental means can not be ruled out based on the available factual information.

24.     Mr. Profka was so unwilling to entertain the possibility of an accidental fire that he went so far as to conclude that even if a cigarette started the fire it would have had to been intentionally flicked into the closet.

        Drawing the conclusion there was an intentional act simply by finding a cigarette in the closet is inconsistent with the facts and common sense and therefore unreliable.

Ponziano:          Q.     What if a cigarette was just laying on
                          floor by itself, without being in a trash receptacle?

|        |    | What if a cigarette was just laying on the floor? |
|--------|----|---------------------------------------------------|
| Profka: | A. | Well, you are going to have to go a little bit further. Are you talking about floor like this with nothing around it? Are you talking debris, contents, combustibles, paper, cardboard? |
|        | Q. | I am talking about the situation that you observed at Mr. Hopkins' house. If a cigarette happened to be laying on that floor, could a fire like this start within an hour-and-a-half? |
|        | A. | Laying on the floor in the closet? |
|        | Q. | Yes. |
|        | A. | Well, if I found a cigarette laying on the floor in the closet, I would have thought somebody probably flicked it in intentionally. More than being careless, I would think it was done accidentally on purpose. So … |

Motion Ex. F. Profka, N.T. 42:7-24

Mr. Schneiders found Mr Profka's statement about the cigarette unscientific:

|            |    |                                                              |
|------------|----|--------------------------------------------------------------|
| Ponziano:  | Q. | Do you agree that that would be a finding of a scientific principle of determining a fire loss? |
| Schneiders: | A. | There is no science in that statement whatsoever, that he would do it accidentally on purpose. |
|            | Q. | Did you see any evidence in your investigation that would indicate that what was donewas intentional? |
|            | A. | No. |

Motion Ex. E, Schneiders, N.T. 97:23-98:8

25.    Mr. Profka admitted he did not find any evidence of a flammable liquid. This is inconsistent with his conclusion that an intentional use of a flammable liquid was used to start the fire.

> THE DEPONENT: 19? You mean did I find any
> remains of any kind of a flammable liquid?
>
> Q.    Or anything that -- let's start with that
> question, yes. Did you see anything that looked like
> remains of a flammable liquid?
>
> A.    You can't see that, not in debris like
> that, because all the combustible material is going
> to burn at probably about the same rate or degree,
> because of the fact we have a pile there.

Motion Ex. F, Profka N.T. 54:1-9

26.    Mr. Profka deduced that there will be no signs of a flammable liquid if only a small amount is used. This is inconsistent with a desire to intentionally set fire to the house. Common sense would dictate more than a little swish or splash of flammable liquid would be used if the intent was to burn down the house. His conclusion that Mr. Hopkins intentionally applied a flammable liquid to start the fire is inconsistent with the potential presence of a small amount of liquid and therefore unreliable.

> Now, when I used the combustible gas
> detector I didn't detect anything. That doesn't mean
> it wasn't there, because it will burn off, depending
> on how much was applied. If it's just a couple
> swishes or maybe a little splash, it will burn off
> the hydrocarbons, and the detector won't pick it up.

Motion Ex. F, Profka N.T. 54:10-15

> I previously explained this to you. When
> You have a pile of combustible material that has

> burned, unless there is a significant amount, it's
> really hard to detect.
> If I don't catch anything with the
> hydrocarbon detector I couldn't tell you whether
> there was anything there or not.

Motion Ex. F, Profka N.T. 55:2-8

27.    Mr. Profka wanted to talk to Mr. Hopkins before he made a decision because he

would take Mr. Hopkins' testimony as truthful. This is inconsistent with Mr. Profka's

theory that Mr. Hopkins is lying when he said he did not know how the fire started. If

there is no reason or evidence to question Mr. Hopkins honesty, than Mr. Profka must

accept his testimony as accurate and truthful and conclude this was an accidental fire. His

methodology once again does not fit the facts.

| Ponziano: | Q. | So if there were a cigarette, for instance, that was smoldering, you are saying within an hour-and-a-half's time a fire such as this could start? |
|---|---|---|
| Profka: | A. | Well, that's the incipient stage. Of course everything is dependent on how much trash was in the trash receptacle - - if there was a trash receptacle. I found no remains of garbage. |
| | | So I waited until I talked to Mr. Hopkins before I came to a final conclusion. He said he didn't put anything in there. I had no reason not to believe him. |

Motion Ex. F. Profka N.T. 42:3-6

### Conclusion

28.    For the foregoing reasons, Mr. Profka's cause of the fire opinion fails the <u>Paoli</u>

requirements.

## D. AN IN LIMINE HEARING IS NOT NECESSARY TO DISQUALIFY MR. PROFKA OR IS REQUESTED

29.     The Third Circuit has recognized the importance of conducting in limine hearings under Federal Rule of Evidence 104(a) when making reliability determinations under FRE 702 and Daubert. Padillas v. Stork-Gamco, Inc. 186 F.3d 412 (3d Cir.1999)

30.     However, where the factual record is substantial and a hearing would not yield any new information, an in limine hearing is not necessary. Oddi v. Ford Motor Company, 234 F.3d 136, 144 (3d Cir. 2000), cert. denied 532 U.S. 921 (2001). For example, in Voilas v. General Motors Corp., 73 F.Supp.2d 452, 455 (D.N.J. 1999) (Magistrate Judge Wolfson), the Court decided the in limine motion without a Rule 104(a) hearing. Cognizant of the Third Circuit's statement in Padillas that in limine hearings are important, the Court held that a hearing was unnecessary where the expert witness was extensively deposed, thereby providing him with "ample opportunity at his deposition to explain, and even correct, deficiencies [ the expert report]" raised by the movant. Id. In Voilas, while both parties agreed that a hearing was not necessary, the Court held that a hearing was not necessary because the factual record was complete and a hearing would not bring new information to light. Voilas, 73 F.Supp.2d at 455.

31.     Here, the expert witness was extensively deposed, and produced two reports, thereby providing him with ample opportunity to defend his position, and an in limine hearing is not necessary to disqualify him.

If the motion papers are not sufficient to disqualify him, a hearing is respectfully requested.

## E. CONCLUSION

32.    Mr. Profka's testimony fails the <u>Daubert</u> test and the <u>Paoli</u> requirements.

33.    Therefore, Mr. Profka is not qualified to offer expert opinion testimony, and should be precluded from doing so at the trial.

WHEREFORE, plaintiff respectfully moves that the Court determine, in limine, that defendants are precluded from introducing the expert testimony of Mr. Alex Profka at the trial of this matter.

 

_____
Robert B. Ponziano
Counsel for Plaintiffs
118 N. State Street
Newtown PA 18940
215 968 9518

Date_____

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **THOMAS AND SANDRA** | : | |
| **HOPKINS h/w** | : | |
| **Plaintiffs** | : | |
| | : | |
| | : | |
| **vs.** | : | **CIVIL ACTION** |
| | : | |
| **HARTFORD FIRE** | : | |
| **INSURANCE COMPANY** | : | |
| **Defendant** | : | **NO. 02-CV-3207** |

_____

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION IN
LIMINE TO PRECLUDE THE EXPERT TESTIMONY OF MR. ALEX PROFKA**

**FACTS**

This case primarily involves the reliability of the defendant's decision that the fire

loss at the plaintiffs'/ insureds' premises located at 47 Hickory Hill Road, White Haven,

Pennsylvania was not a fortuitous loss and that coverage for the fire loss should be

excluded under the policy and common law. See Hartford's denial letter Exhibit A

Hartford claims it conducted an investigation into the fire loss at 47 Hickory Hill

Road, White Haven, Pennsylvania on August 9, 2001 and on the basis of the information

gathered denied the claim citing the Concealment or Fraud exclusion and the Intentional

Loss exclusion to the policy. See denial letter, Exhibit A., In essence, claiming Mr.

Hopkins intentionally set fire to his house.

Hartford plans to offer the expert opinion testimony of Mr. Alex Profka of Bieber

& Associates, who produced an initial written report on August 10, 2001 and a follow up

written report on June 5, 2003. See Profka reports attached hereto as Exhibit B and C. His

reports and deposition show he will testify, if allowed, that the fire is being termed an

incendiary fire, a fire that was intentionally set in the closet area, on the floor, in combustible materials and that due to the blistering of the floor that a flammable liquid was used. Profka admits, however, there was no evidence of a flammable liquid detected at the scene. See Profka reports, page 4, attached hereto as Exhibits B and C.

A central issue in this case, therefore, is whether Hartford has met its burden of proving that these cited exclusions apply and Mr. Hopkins, in fact, intentionally set fire to his house. An insurer must bear the burden of proof that an exclusion applies. *Miller v. Boston Insurance Company*, 420 Pa. 566, 570, 218 A.2d 275, 277 (1966). See also, *Myrtil v. Hartford Insurance Company*, 510 F. Supp. 1198, 1200-1201 (E.D.Pa.1981) (where an insurer seeks to disclaim under an insurance policy by invoking an exclusionary provision, it bears the burden of proving the exclusion is applicable to the case).

Mr. Hopkins has consistently maintained he did not know how the fire started.

Contrary to the defendant's conclusions, there is no evidence that Mr. Hopkins intentionally set fire to his house regardless of Hartford's investigative results. Plaintiff has not intentionally set fire to his house and Hartford has not met its burden of proving an incendiary fire.

## **ARGUMENT**

### I.    STANDARD OF REVIEW

As set forth in the motion, the relevant test for expert testimony is that of Federal Rule of Evidence 702, which provides as follows:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or

> otherwise if (1) the testimony is based upon sufficient facts or data, (2)
> the testimony is the product of reliable principles and methods, and (3)
> the witness has applied the principles and methods reliably to the facts
> of the case.

FRE Rule 702 (emphasis added).

Pursuant to FRE 702, it is the role of the trial judge to act as a "gatekeeper" to ensure that any and all expert testimony or evidence is not only relevant, but also reliable. Daubert v. Merrell Dow Pharmaceuticals, Inc. 509 U.S. 579, 589 (1993).

"Under Rule 104(a), the District Court makes preliminary determinations regarding whether the proposed expert witness is qualified and whether the testimony to be given is admissible under Rule 702. This preliminary task ensures that the testimony meets a minimum threshold of reliability and relevance." Holbrook v. Lykes Bros. S.S. Co., 80 F.3d 777, 781 (3d Cir. 1996) (citing Daubert and U.S. v Velasquez, 64 F. 3d 844, 849 (3d Cir. 1995) (Virgin Isl.)). "The admissibility inquiry thus focuses on principles and methodology…" In re TMI Litigation, 193 F.3d 613, 665 (3d Cir. 1999) (citing Kannankeril v Terminix International Inc. 128 F.3d 802, 806 (3d Cir. 1997: In re Paoli R.R. Yard PCB Litig. 35 F. 3d 717. 744 (3d Cir. 1994)). "The goal is reliability…" In re TMI, 193 F.3d at 665.

It is the burden of the proponent of the evidence to show "by a preponderance of proof" that the testimony is qualified, i.e. the expert is qualified, the methodology used is reliable and is based on good grounds, and the research fits the facts of the case. Oddi v. Ford Motor Company 234 F.3d 136, 144 E d Cit. 2000), cert. denied 532 U.S. 921 (2001) (citing FRE C Rule 104(a) and Daubert 509 U.S. at 593).

Pursuant to Daubert the Third Circuit, in In re Paoli R.R. Yard PCB Litig. 35 F.3d 717 (3d Cir. 1994), specified that the Court must determine the following:

(1) Qualifications - whether the expert is qualified to speak with authority on a particular subject or issue;

(2) Reliability - whether the expert's methodology is sound and whether his or her opinion is supported by 'good grounds'; and

(3) Fit - whether there is a relevant 'connection between the scientific research or test result to be presented and particular disputed factual issues in this case'

Yarchak v. Trek Bicycle Corp. 208 F.Supp.2d 470, 494 (D.N.J. 2002) (Judge Irenas) (citing Paoli 35 F.3d at 741-43) (3d Cir. 1994)).

The defendant cannot meet this burden.

Under these tests, Mr. Profka's proposed testimony is not admissible because all of the above requirements are not met.

## II.    CAUSATION OF FIRE

Mr. Profka's proposed conclusions express his claims that the fire was intentionally set by Mr. Hopkins and due to the blistering of the floor tiles a flammable liquid was used.

Mr. Profka's conclusions relate in whole or in part to causation of the fire and are based on common expert opinions.

The plaintiffs arranged for Mr. Profka's first report and deposition transcript to be reviewed by Mr. Thomas D. Schneiders, C.F.E.I. of Lawrence J. Dove Associates. Mr. Schneiders also inspected the property. His report and relevant deposition testimony is attached hereto as Exhibits D and E.  Mr. Schneiders is a well qualified expert on Fire cause and origin. His curriculum vitae is attached hereto as Exhibit "D". Mr. Schneider's is the president of Lawrence J. Dove Associates, a nationally known forensic consulting firm specializing in fire and explosion investigations of industrial, commercial and

residential sites. In fact, Mr. Schneiders has been hired by the defendant in the past for forensic consulting purposes.

Mr. Schneiders' review of Mr. Profka's expert report and testimony, together with Mr. Profka's own admissions and other evidence cited herein, show that Mr. Profka's opinion testimony should be precluded. See Schneiders expert report Exhibit D and relevant deposition testimony of Schnieders attached as Exhibit E.

Considering the facts of record cited by Mr. Schneiders, the evidence shows that Mr. Profka's methodology is not generally accepted in the scientific community, and his conclusions are not based on "good grounds".

**A.    Second Paoli Requirment: Methodology**
**Mr. Profka's causation methodology is unsound and his conclusions**
**are not supported by "Good Grounds"**

Mr. Profka's proposed opinion that the fire was intentionally set in the closet area, on the floor, in combustible materials and that due to the blistering of the floor that a flammable liquid was used, fails to meet the second requirement of the test set forth by the Third Circuit in Paoli, based on Daubert, *i.e. the methodology used to reach the conclusion must be reliable and the conclusions must be supported by good grounds,* because his conclusion is inconsistent with his own test results and he did not conduct industry accepted tests and follow industry standards before determining the cause of the fire.

In Paoli, the Third Circuit prescribed factors to be considered in a Daubert inquiry into the expert's methodology and conclusions, including:

> (1) whether a method consists of a testable hypothesis; (2) whether the method. has been subject to peer review; (3) the known or potential rate of error; (4) the existence and maintenance of standards controlling the technique's operation; (5) whether the

method is generally accepted; (6) the relationship of the technique to methods which have been established to be reliable; (7) the qualifications of the expert witness testifying based on the methodology; and (8) non— judicial uses to which the method has been put.

In re Paoli, 35 F.3d at 742, n. 8.

Mr. Profka's "evaluation" abjectly fails to meet the Paoli tests for several reasons, as follows:

(a)     Mr. Profka failed to employ scientific methods to examine the floor for flammable liquids. This renders his method unreliable and his conclusions a flammable liquid was intentionally used to start the fire not based on good grounds. See (d) below. In this case, his study fails Paoli tests, 1,2,3,4, 5 and 6.

(b)     Mr. Profka's opinion is also not reliable because he is not honest in reporting the facts. A good example of this is expressed in Mr. Profka's follow-up report. In his over zealous desire to prove credibility, Mr. Profka is quick to characterizes Mr. Hopkins as a liar.

Mr. Profka follow-up report to Mr. Schneiders report states:

> The report by Mr. Schneiders discusses the fact that the insured, Mr. Hopkins, was a smoker and was, therefore, not truthful with this investigator, or during his deposition, that he did not place any smoking material into the storage area, where this fire had its inception. The type of fire that occurred in the storage area, next to the water heater, as described by this investigator, was a fire that was intentionally set. The tiles that were blistered in the area were not caused by anything other than a flammable liquid, in the opinion of this investigator.

Motion Ex. C, p.15 ¶2.

In reality, Mr. Hopkins clearly disclosed during the interview with Mr. Profka he was a smoker and that he was smoking in the bedroom near the closet on the day of the fire.

| Mr. Profka: | Q. | Do you smoke cigarettes? |
| Mr. Hopkins: | A. | Yes |
| | Q. | Were you smoking that day? |
| | A. | Oh Yeah. In the closet no. But in my room, I was |

sitting on the side of the bed, probably I think I left a cup and an ashtray there. The [cut] had water in it and that's where I would put the cigarette out, put the matches in there.

Motion Ex. B and C, attachments incorporated into Profka reports, Hopkins interview Septmeber 4, 2001 p. 11.

Mr. Profka failed to mention in either report that Mr. Hopkins was a smoker and smoking in the house on the day of the fire.

Also, Mr. Schneider's report does not infer that Mr. Hopkins was untruthful in his testimony. The report simply expresses that Mr. Hopkins' statements are not uncommon of a homeowner/smoker who house is damaged by fire. Mr. Schnieders report states in part:

> 11. the known circumstances of this fire and its discovery are explainable as a result of an accidental fire due to the inadvertent discarding of cigarette embers/materials in the closet area of fire origin;
>
> 12. Mr. Hopkins recorded interview (September 4.2001) and statement under oath (February 5, 2002) including information that he was not in the closet on the day of the fire, that he did not smoke in the closet. . . are explainable and (based on my years of experience with these type of fires) not atypical statements of a homeowner/smoker whose home has been damaged by fire; and
>
> 13. the accidental discarding of smoking materials is consistent with the known facts of this fire and its discovery, and provides a credible determination regarding the cause of this fire in conformance with NFPA 921.

Motion Ex., D, Schneiders report p. 6

In explaining why Mr. Hopkins was so insistent that he didn't smoke in the closet and inadvertently drop embers that started the fire, Mr. Schneiders determined, through experience, that Mr. Hopkins didn't realize he was smoking in the closet.

| MacBride: | Q. | Even if it meant the |
| | | insurance company declining their claim? |
| Schneiders: | A. | I think that he doesn't – |
| | | till this day, I would guess that he |
| | | doesn't believe that he started that fire. |
| | | but I know what a smoking fire looks like |
| | | and this is a smoking fire. |

Motion Ex.E, Schnieders N.T 89:13-17

Mr. Profka's hyperbole and intentional exclusion of relevant information suggests his study was not controlled and non-biased and therefore his conclusions are not based on good grounds. This fails the Paoli tests 1, 4 and 5.

(c)     Mr. Profka formed his opinions based upon assumed, rather than documented and known facts, thereby rendering his methodology unreliable. The time-frame references made by the neighbors, Giardina and Babbit, are second-hand anecdotal experiences. Such anecdotal experiences are not a proper basis for a conclusion regarding causation.

Like clinical opinions and case reports, unsupported time-frame references are "not a scientifically reliable basis for a causation opinion." Lennon v.  Norfolk and Western Railway Co. 123 F.Supp.2d 1143,1152 (N.D.Ind. 2000); See generally, Allison v. McGhan Med. Corp. 184 F.3d 1300, 1316 (11th Cir. 1999) ; In re Breast Implant, 11 F.Supp.2d 1217,1230 (D.Colo. 1998); Haggerty v Upjohn Co., 950 F.Supp. 1160, 1164 (S.D. Fla. 1996) ("while case reports may provide anecdotal support, they are not a

substitute for scientifically designed and conducted inquiry"). Case reports are

universally regarded as unreliable because they lack controls. In re Breast Implant

Litigation 11 F.Supp.2d at 1230. The District Court explained:

> Such case reports are not reliable scientific evidence of causation,
> because they simply describe reported phenomena without
> comparison to the rate at which the phenomena occur in the general
> population or in a defined control group; do not isolate and exclude
> potentially alternative causes; and do not investigate or explain the
> mechanism of causation.

In re Breast Implant 11 F.Supp.2d at 1231 (quoting Casey v. Ohio Medical Products 877

F.Supp. 1380,1385 (N.D.Cal. 1995) ("while case reports may provide anecdotal support,

they are no substitute for a scientifically designed and conducted inquiry").

    Mr. Profka stated in his report and at his deposition that he interviewed neighbors,

Joseph Babbit and Al Giardiana, and relied on their testimony when forming his opinion

that Mr. Hopkins intentionally set the fire. For example:

Ponziano:    Q.    So if I'm characterizing your testimony
    correctly, the sole reason that you believe this was
    an intentionally set fire was the fact that there
    were bubbled titles on the floor?

Profka:    A.    No
    Mr. MacBride: Objection. You may answer.
    THE DEPONENT: That is not the sole reason.
    That's one of the reasons.

    Q.    What other - -

    A.    The time frames. When Mr. Hopkins was
    there and his vehicle was observed by Mr. Giardina.
    The fact that the house was found locked by the fire
    department and secured; they had to force their way
    in. So that means that when the owner, Mr. Hopkins,
    left, the house was secured. And they broke the door
    to get in to fight the fire. The way the fire spread

from that location, causing the amount of damage in
1 approximately 45 minutes to when the fire was seen.
But I'm backing that up, because Mr. Babbit had to go
back to his house -- the boy, Joe Babbit. He had to
go up to the intersection, which was probably --
maybe 40, 50 yards -- and go over to his house, which
was up at the T intersection over -- I don't know how
far, maybe 100, 200 yards over. Then he had to get
his parents or grandparents back over to see the
smoke coming out. They called the fire
department.

      So we're looking at maybe 1:45 the car
is still there, 1:15 the first observation of smoke
is -- 2:30, excuse me. My times are wrong.

      At 1:45 the vehicle is seen by Mr.
Giardina, Mr. Hopkins' car. 2:30 is when the call is
made to com center that there is a fire. That's Mr.
Babbit. He's walking when he sees the fire, goes
back to the house, grabs his parents or grandparents
to come down -- I'm not sure if it was his parents of
grandparents, I think grandparents -- then they go
back and call the fire in.

      So there's maybe a 10 minute, 12
minute time lapse in there before the fire is called
in after it's first observed. So that backs it up to
about a half hour.

      So between the time frame, the
blistered tiles, the fire spread that I saw, the
absence of any accidental means of causing the fire,
and the forceable entry made by the fire
department -- you know, all that leads me to the
conclusion that this was an intentionally set fire.

Motion Ex.F. Profka, N.T. 38:18-40-13

Mr. Profka has failed to establish the accuracy and accountability of the neighbors statements. The time-frame references made by Giardina and Babbit, are second-hand anecdotal experiences that are not a scientifically reliable basis for a causation opinion. See e.g., In re Breast Implant Litigation supra (citing Muzzey v. Kerr-McGee Chemical Corp. 921 F.Supp. 511,519 (N.D.Ill. 1996). In this, Mr. Profka fails Paoli tests 1 and 5.

     (d)    Mr. Profka's tests are grossly incomplete.

Mr. Profka looked in the closet saw blistering on the tile floor, performed a TIF8800 Combustible Gas Detector test, with negative results, and concluded a flammable liquid was intentionally placed on the floor by Mr. Hopkins and the fire was intentionally set. Mr. Profka came to this conclusion even after admitting he couldn't tell if there was a flammable liquid with the negative test results.

> If I don't catch anything with the Hydrocarbon detector I couldn't tell you whether there was anything or not.

Motion Ex. F. Profka N.T. 55: 6-8

Mr. Profka also stated in his reports he did not take samples of the floor area for testing due to the negative reading with the Combustible Gas Detector.

Mr. Profka understood the importance of testing the blistered tiles but nevertheless chose not to do so.

> Where you can really determine what you have in the way of a flammable liquid would be like on the tiles that are blistered. Because there - -because the evidence is there that the blistering has occurred. There's been a high amount of heat right at floor level

Motion Ex. F. Profka N.T. 54:16-21

His testing technique to determine whether there was a flammable liquid on the floor is inadequate and contrary to industry standards.

Mr. Schnieders pointed out in his report that, "Mr. Profka misinterpreted the significance of the physical damage (i.e. blistering of the floor titles) which Mr. Profka incorrectly determined was evidence of a deliberate use of flammable liquids". See Schneiders report exhibit D, p. 5, ¶6.

Mr. Schnieders has explained that a more thorough testing of the floor area should have been conducted before concluding that a flammable liquid was there.

MacBride:          Q.     Are there situations where a
                          flammable liquid can be used to start a
                          fire, yet when you examine the scene, all
                          evidence of that has been burned away?

Schneiders:        A.     If you have total
                          destruction. But if I had an area that I
                          thought was blistering and I still had that
                          blistering tile, then it's not burned away.
                          And I would have taken that piece of tile
                          and had it analyzed at a lab and have them
                          tell me that it has flammable liquid in it.
                          That would still be there if the piece was
                          still there.
                          If those tiles were
                          Completely gone, washed away down the
                          Street through fire hoses, yes. But with
                          So much of this scene remaining here, Mr.
                          MacBride, there's a clear indication that
                          there wasn't a flammable liquid in there.
                          He should have taken samples of that into a
                          lab and that would have given you the

answer.

Motion Ex. E, Schneiders, N.T. 72:3-24

> A.    His reading that day was
> negative. But there's a lot more
> sophisticated equipment, like a gas
> spectrophotometry, that he could submit to
> a laboratory and do it as opposed to -- and
> that's basically a field test type of
> thing.

Motion Ex. E, Schneiders, N.T. 73:6-12

Mr. Profka's failure to employ a more accurate testing procedure and his

willingness to disregard his own test results that indicated no flammable liquids renders

his methodology unreliable and his conclusions not based on good grounds.

In this, he fails <u>Paoli</u> tests 1, 3, 4 and 5.

(e)    Mr. Profka failed to consider significant data sources. An expert must

consider adequate relevant data, relied upon by experts in the field, in rendering a

causation conclusion. <u>In re Paoli</u>, 35 F.3d at 746. Exclusion of relevant data is improper.

If enough relevant data is not available, the expert should reconsider his methodology.

<u>Total Containment, Inc. v Dayco Products, Inc.</u>, 2001 WL 1167506, *7 (E.D. Pa. 2001).

1,    Failure to consider Mr. Schneiders results and the results of the

police and fire departments investigation.

Mr. Profka produced a follow up report after reviewing Mr. Schneiders report.

Mr. Schneider, as an expert in this field, considered as significant sources, the findings of

the State police department (See Exhibit G), and fire department when rendering his

opinion as to the cause of the fire. As pointed out in Mr. Schnieders' report, "the public

sector investigation did not determine that the fire was incendiary in nature or

deliberately accelerated by human action and the Pennsylvania State Police Corporal Daniel Balleit's official classification for the fire cause is undetermined". See exhibit D, p. 6, ¶¶ 9&10.

Mr. Schneiders determined the fire was not intentional and disputed Mr. Profka's findings and conclusions:

Schneiders:                         Further, he [Profka] states on page
                                    20, line 5, that in the closet there was a
                                    lot of really combustible materials, paper,
                                    cardboard, different things laying on the
                                    floor. That would be an indication that if
                                    you had a flammable liquid fire start in
                                    that area, those light combustibles, the
                                    paper, cardboard, that would be consumed.
                                         Also, on page 41, line 10,
                                    Mr. Hopkins, if it contained any discarded
                                    smoking materials, there would have been a
                                    hotspot into the floor. There was a
                                    hotspot into the floor that Mr. Profka had
                                    missed. This is the spot that burned
                                    through the floor to the basement. He said
                                    I didn't find that.

Motion Ex. E, Schneiders, N.T. 95:3-18

Mr. Profka disregarded Mr. Schneiders findings and also ignored the findings of the police department and the fire department. In this, he fails Paoli test number 1, 3 & 5.

2.      Failure to perform more accurate tests.

Mr. Profka failed to remove a sample of the title floor for more accurate testing. Mr. Schneiders points out in both his report and his deposition that more accurate testing should have been performed on the title floor before concluding the floor contained a

flammable liquid. Without this test it would be improper to conclude there was a flammable liquid on the floor. In this, he fails <u>Paoli</u> test number 1, 3 and 5.

        3.      Refusal to conduct a thorough investigation.

Mr. Profka mentioned in his reports and deposition that no metal or plastic container was found in the closet or elsewhere. Exhibit B & C, p.13 ¶2 of reports 1 and 2.

> When I went through the debris we're looking at in 19, I was looking for the remains of any type of garbage. Soda cans, soup cans, tuna cans – any kind of garbage that people would put into a garbage or trash receptacle and put into a closet. I didn't find any.

Motion Ex. F, Profka N.T. 55:12-17

The absence of a container assisted him in forming his opinion that the fire was intentionally set.

Mr. Schneider's found, during his investigation, after Mr. Profka's investigation, the fire damaged remains of a metal one quart container in the debris removed to the bathroom on the eastern side of the closet area of fire origin. Schneiders report, Exhibit D, p. 7.

The can was discussed during in Mr. Schneiders deposition and it has been made available to Mr. Profka for examination. Mr. Profka chose not to examine the can and has refused to amend his report to reflect the discovery of this vital piece of evidence. In this, he fails <u>Paoli</u> test number 1, 3 and 5.

Since there was not enough relevant information available to confirm intentional use of flammable liquids and an intentionally set fire, Mr. Profka should have reconsidered his methodology and concluded that the fire was not incendiary in nature.

    4.     Ignoring his own test results which indicated no presence of a flammable liquid.

Mr. Profka refused to consider his own findings that no flammable liquids were discovered at the source of the fire. In this, he fails <u>Paoli</u> test number 1, 3 and 5.

    **B.**    **Third <u>Paoli</u> Requirement: "Fit"**
                   **Mr. Profka did not apply the principles and**
                   **methods reliably to the facts of the case**

Mr. Profka's testimony also does not meet the third <u>Paoli</u> requirement, i.e. "fit" between the research and the facts of the case.

FRE Rule 702 and <u>Daubert</u> require that the expert "has applied the principles and methods reliably to the facts of the case", i.e. the expert's proffered testimony must "fit" the facts of the case. <u>U.S. v. Velasquez</u> 64 F.3d 844, 850 (3d Cir. 1995) (Virgin Isi.).

"Fitness" relates to whether the testimony assists the trier of fact by being relevant to the issues at hand. <u>In Re Paoli,</u> 35 F.3d at 743. Admissibility thus depends in part upon "the proffered connection between the scientific research or test results to be presented and particular disputed factual issues in the case." <u>Id</u>.

The "material" testimony proffered by Mr. Profka is that the fire is being termed an incendiary fire, a fire that was intentionally set in the closet area, on the floor, in combustible materials and that due to the blistering of the floor that a flammable liquid was used. See Profka reports, Exhibits B and C, p.4.

Mr. Profka's conclusion of an "absence of any accidental means of causing the fire" (Profka N.T. 40:10-15), does not fit the facts of this case.

While a water heater or electrical wiring malfunction has been ruled out by both Mr. Profka and Mr. Schneiders through the introduction of testing results by Cliff Patton

of Patton Forensic Engineering's, other accidental means can not be ruled out based on the available factual information.

Mr. Profka was so unwilling to entertain the possibility of an accidental fire that he went so far as to conclude that even if a cigarette started the fire it would have had to been intentionally flicked into the closet.

Drawing the conclusion there was an intentional act simply by finding a cigarette in the closet is inconsistent with the facts and common sense and therefore unreliable.

| Ponziano: | Q. | What if a cigarette was just laying on floor by itself, without being in a trash receptacle? What if a cigarette was just laying on the floor? |
| Profka: | A. | Well, you are going to have to go a little bit further. Are you talking about floor like this with nothing around it? Are you talking debris, contents, combustibles, paper, cardboard? |
| | R. | I am talking about the situation that you observed at Mr. Hopkins' house. If a cigarette happened to be laying on that floor, could a fire like this start within an hour-and-a-half? |
| | A. | Laying on the floor in the closet? |
| | Q. | Yes. |
| | A. | Well, if I found a cigarette laying on the floor in the closet, I would have thought somebody probably flicked it in intentionally. More than being careless, I would think it was done accidentally on purpose. So … |

Motion Ex. F, Profka, N.T. 42:7-24

Mr. Schneiders found Mr Profka's statement about the cigarette unscientific:

| Ponziano: | Q. | Do you agree that that would |

|  |  | be a finding of a scientific principle of |
|--|--|--|
|  |  | determining a  fire loss? |
| Schneiders: | A. | There is no science in that |
|  |  | statement whatsoever, that he would do it |
|  |  | accidentally on purpose. |
|  | Q. | Did you see any evidence in |
|  |  | your investigation that would indicate that |
|  |  | what was donewas intentional? |
|  | No. | No. |

Motion Ex. E, Schneiders, N.T. 97:23-98:8

Mr. Profka admitted he did not find any evidence of a flammable liquid. This is inconsistent with his conclusion that an intentional use of a flammable liquid was used to start the fire.

|  |  | THE DEPONENT: 19? You mean did I find any |
|--|--|--|
|  |  | remains of any kind of a flammable liquid? |
|  | Q. | Or anything that -- let's start with that |
|  |  | question, yes. Did you see anything that looked like |
|  |  | remains of a flammable liquid? |
|  | A. | You can't see that, not in debris like |
|  |  | that, because all the combustible material is going |
|  |  | to burn at probably about the same rate or degree, |
|  |  | because of the fact we have a pile there. |

Motion Ex. F, Profka N.T. 54:1-9

Mr. Profka deduced that there will be no signs of a flammable liquid if only a small amount is used. This is inconsistent with a desire to intentionally set fire to the house. Common sense would dictate more than a little swish or splash of flammable liquid would be used if the intent was to burn down the house. His conclusion that Mr. Hopkins intentionally applied a flammable liquid to start the fire is inconsistent with the potential presence of a small amount of liquid and therefore unreliable.

> Now, when I used the combustible gas
> detector I didn't detect anything. That doesn't mean
> it wasn't there, because it will burn off, depending
> on how much was applied. If it's just a couple
> swishes or maybe a little splash, it will burn off
> the hydrocarbons, and the detector won't pick it up.

Motion Ex. F, Profka N.T. 54:10-15

> I previously explained this to you. When
> You have a pile of combustible material that has
> burned, unless there is a significant amount, it's
> really hard to detect.
> If I don't catch anything with the
> hydrocarbon detector I couldn't tell you whether
> there was anything there or not.

Motion Ex. F, Profka N.T. 55:2-8

Mr. Profka wanted to talk to Mr. Hopkins before he made a decision because he would take Mr. Hopkins' testimony as truthful. This is inconsistent with Mr. Profka's theory that Mr. Hopkins is lying when he said he did not know how the fire started. If there is no reason or evidence to question Mr. Hopkins honesty, than Mr. Profka must accept his testimony as accurate and truthful and conclude this was an accidental fire. His methodology once again does not fit the facts.

Ponziano:      Q.    So if there were a cigarette, for instance,
                     that was smoldering, you are saying within an
                     hour-and-a-half's time a fire such as this could
                     start?

Profka:        A.    Well, that's the incipient stage. Of
                     course everything is dependent on how much trash was
                     in the trash receptacle - - if there was a trash
                     receptacle. I found no remains of garbage.

> So I waited until I talked to
> Mr. Hopkins before I came to a final conclusion. He
> said he didn't put anything in there. I had no
> reason not to believe him.

Motion Ex. F. Profka N.T. 41:20-42:6

For the foregoing reasons, Mr. Profka's cause of the fire opinion fails the <u>Paoli</u> requirements.

## III.    AN IN LIMINE HEARING IS NOT NECESSARY TO DISQUALIFY MR. PROFKA OR IS REQUESTED

The Third Circuit has recognized the importance of conducting in limine hearings under Federal Rule of Evidence 104(a) when making reliability determinations under FRE 702 and <u>Daubert</u>. <u>Padillas v. Stork-Gamco, Inc</u>. 186 F.3d 412 (3d Cir.1999)

However, where the factual record is substantial and a hearing would not yield any new information, an in limine hearing is not necessary. <u>Oddi v. Ford Motor Company,</u> 234 F.3d 136, 144 (3d Cir. 2000), <u>cert. denied</u> 532 U.S. 921 (2001). For example, in <u>Voilas v. General Motors Corp</u>., 73 F.Supp.2d 452, 455 (D.N.J. 1999) (Magistrate Judge Wolfson), the Court decided the in limine motion without a Rule 104(a) hearing. Cognizant of the Third Circuit's statement in <u>Padillas</u> that in limine hearings are important, the Court held that a hearing was unnecessary where the expert witness was extensively deposed, thereby providing him with "ample opportunity at his deposition to explain, and even correct, deficiencies [ the expert report]" raised by the movant. <u>Id</u>. In <u>Voilas,</u> while both parties agreed that a hearing was not necessary, the Court held that a hearing was not necessary because the factual record was complete and a hearing would not bring new information to light. <u>Voilas,</u> 73 F.Supp.2d at 455.

Here, the expert witness was extensively deposed, and produced two reports, thereby providing him with ample opportunity to defend his position, and an in limine hearing is not necessary to disqualify him.

If the motion papers are not sufficient to disqualify him, a hearing is respectfully requested.

## **CONCLUSION**

Mr. Profka's testimony fails the <u>Daubert</u> test and the <u>Paoli</u> requirements. Therefore, Mr. Profka is not qualified to offer expert opinion testimony, and should be precluded from doing so at the trial.

_____
Robert B. Ponziano
Counsel for Plaintiffs
118 N. State Street
Newtown, PA 18940
215 968 9518

Date _____

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

THOMAS AND SANDRA          :
HOPKINS h/w               :
       Plaintiffs         :
                  :
                  :
       vs.                :     CIVIL ACTION
                  :
HARTFORD FIRE             :
INSURANCE COMPANY         :
       Defendant          :     NO.  02-CV-3207
_____

ORDER

      **AND NOW** this _____ day of _____, 2003 upon Plaintiffs Motion

in Limine to Preclude the Expert Testimony of Mr. Alex Profka and any response thereto,

      **IT IS ORDERED** that the Motion in Limine is GRANTED, and defendant is

precluded from introducing the expert testimony of Mr. Alex Profka at the trial of this

matter.

_____
                                         J.