**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **THOMAS AND SANDRA HOPKINS, h/w** | : | **CIVIL ACTION** |
| | : | |
| **Plaintiffs,** | : | |
| | : | |
| | : | **No. 02-CV-3207** |
| | : | |
| **v.** | : | |
| | : | |
| | : | |
| **HARTFORD FIRE INSURANCE COMPANY** | : | |
| | : | |
| **Defendant.** | : | |

## <u>ORDER</u>

**AND NOW** this _____ day of _____, 2003 upon Plaintiffs'

Motion in Limine and Memorandum of Law in Support Thereof to Preclude Expert

Testimony of Alex Profka,

**IT IS ORDERED** that the Motion in Limine is DENIED, and defendant  may

introduce the expert testimony of Mr. Alex Profka at the trial of this hearing.


_____

                                                                                          J.

## IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **THOMAS AND SANDRA HOPKINS, h/w** | : | **CIVIL ACTION** |
| | : | |
| **Plaintiffs,** | : | |
| | : | |
| | : | **No. 02-CV-3207** |
| | : | |
| **v.** | : | |
| | : | |
| | : | |
| **HARTFORD FIRE INSURANCE COMPANY** | : | |
| | : | |
| **Defendant.** | : | |

### DEFENDANT'S RESPONSE TO PLAINTIFFS' MOTION IN LIMINE AND MEMORANDUM OF LAW IN SUPPORT THEREOF TO PRECLUDE EXPERT TESTIMONY OF ALEX PROFKA

Defendant, Hartford Fire Insurance Company (hereinafter "Hartford"), by and through its counsel, Hecker Brown Sherry and Johnson, LLP, hereby responds to Plaintiffs' Motion in Limine to Preclude Expert Testimony of Alex Profka and Memorandum of Law in support thereof.[1]

**I.    Facts**

On August 9, 2001, a fire damaged the plaintiffs' property located at 47 Hickory Hills Drive, White Haven, PA 18661. This property was insured under policy number 44 RB 568868 issued by defendant, Hartford Fire Insurance Company (hereinafter "Hartford"). On or about August 10, 2001 the plaintiffs notified defendant Hartford of the fire at their property.

---

[1] Plaintiff's Motion in Limine and Memorandum of Law are almost identical, with the only difference essentially being the removal of numbers from the paragraphs in the Motion in Limine and, therefore, Defendant responds to both in this pleading.

On August 10, 2001 Hartford retained Mark Allen of Crawford & Company to investigate this loss. On August 13, 2001 Mr. Allen met with the plaintiffs' public adjuster, Mr. Joseph Cola, at plaintiffs' property to conduct an on-site investigation. After this on-site inspection Mr. Allen retained Mr. Alex Profka as a fire cause and origin expert to determine the exact cause of this fire. Mr. Profka inspected the plaintiffs' premises on August 13, 2001. Mr. Profka then recommended to Mr. Allen that an electrical engineer be retained to examine any potential electrical sources of ignition. Mr. Allen retained Clifford B. Patton to conduct this investigation. On August 28, 2001 Mr. Profka and Mr. Patton conducted a second investigation of the plaintiffs' property. As a result of Mr. Patton's investigation he concluded that there was no evidence of an electrical failure providing the ignition and energy for the fire in the closet at the plaintiffs' home.

On September 4, 2001 Mr. Profka took the recorded statement of the plaintiff, Mr. Thomas Hopkins, regarding the circumstances surrounding the fire of August 9, 2001. Based on Mr. Profka's investigation and the conclusions reached by Mr. Patton, Mr. Profka determined that the fire was an intentionally set fire originating in an interior closet area of the house. Mr. Profka's investigation also determined that Mr. Hopkins was seen leaving the property approximately 45 minutes prior to the discovery of the fire.

On February 5, 2002 Hartford took the examination under oath of both Mr. and Mrs. Hopkins. At that examination under oath the Hopkins' produced numerous documents related to their financial condition prior to the fire.

On May 10, 2002 Hartford notified the plaintiffs that their claim for damages arising out of the August 9, 2001 fire at their property was being denied. As the basis for

this denial the Hartford cited the conditions of the policy which void the policy if the insured's intentionally conceal or misrepresent any material fact or circumstance, engage in fraudulent conduct or make false statements, as well as the exclusion relating to intentional loss caused by an insured.

While the burden of proof rests upon the insurer to show that the insured was responsible for the fire, the insurer only need prove this by a preponderance of the evidence. *Saracco v. Vigilant Ins. Co.,* 2000 U.S.Dist. Lexis 1685 (3rd Cir. 2000) *aff'd without opinion*, 250 F.3d 736 (3rd Cir. 2001). Furthermore, to determine whether a reasonable inference exists that the plaintiff fraudulently burned his property, the fact finder should consider evidence of (1) an incendiary fire; (b) a motive by the insured to destroy the property; and (c) circumstantial evidence connecting the insured to the fire. *Id*. See also, *Mele v. Allstar Insurance Corp.,* 453 F.Supp. 1338, 1341 (E.D.Pa. 1978).


## II.    STANDARD FOR ADMISSIBILITY OF EXPERT EVIDENCE

Federal Rule of Evidence 702, governing the admissibility of expert testimony in federal court, provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

In *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579, 589 (1993), the United State Supreme Court explained that the language of Rule 702 requiring the expert to testify to scientific knowledge means that the expert's opinion must be based on the "methods and procedures of science" rather than on 'subjective belief or unsupported

speculation." *Id.* To guide the courts' assessment of the reliability of proffered scientific expert testimony, the Supreme Court formulated certain guide posts, including: (1) whether the theory or technique can be tested, (2) whether the theory or technique has been subjected to peer review, (3) whether there is a high rate of known or potential error, (4) whether there are standards controlling the technique's operation, (5) whether the theory enjoys "general acceptance," (6) whether there is a sufficient relationship between the technique and methods which have been established to be reliable, (7) whether the expert witness' qualifications are sufficient, and (8) whether the method has been put to non-judicial uses. See *Daubert*, 509 U.S. at 593-94; see also *in re: Paoli Railroad Yard, P.C. v. Litigation*, 35 F.3d 717, 742 n.8 (3rd Cir. 1994). The *Daubert* Court, however, emphasized that the Rule 702 inquiry was "a flexible one" and emphasized that the factors listed above are neither exclusive nor dispositive. See *Daubert*, 509 U.S. at 594-595. This was emphasized by the Court in it's holding in *Kumho Tire Co. v. Carmichael* where it found that the test of reliability is a flexible one, and the four factors set forth in *Daubert* do not constitute a "definitive check list or test." 526 U.S. 137, 150, 119 S. Ct. 1167, 143 L. Ed. 2d 238 (1999). The Third Circuit has interpreted *Daubert* to create a trilogy of restrictions on expert testimony. *Schneider v. Fried*, 320 F.3d 396, 406. (citing *in re: Paoli Railroad Yard, P.C. v. Litigation*, 35 F.3d 717, 741-743 (3rd Cir. 1994). These three restrictions are qualification, reliability and fit. *Id.* Qualification requires that the witness possess specialized expertise. *Id.* Reliability requires that the testimony must be based on the methods and procedures of science rather than on subjective belief or unsupported speculation and that the expert must have "good grounds" for his testimony.

*Id.* Fit requires that the expert's testimony must be relevant for the purposes of the case and must assist the trier of fact.

Moreover, the Third Circuit has explained that the trial court should admit expert testimony "if there are 'good grounds' for the expert's conclusion" notwithstanding the judge's belief that there are better grounds for some alternative conclusion. *Heller v. Shaw Indus., Inc.*, 167 F.3d 146, 152-53 (3d Cir. 1999) (citations omitted). While an expert's testimony need be based on reliable methodology and must reliably flow from that methodology and the facts at issue, it need not be so persuasive as to meet the party's burden of proof or even necessarily its burden of production." *Id.* at 152.

As a general matter, the Rules of Evidence "embody a strong and undeniable preference for admitting any evidence" that could potentially assist the trier of fact and Rule 702 is liberally interpreted by the district courts. *Holbrook v. Lykes Bros. Steamship Co., Inc.*, 80 F.3d 777, 780 (3d Cir. 1996) (citations omitted).

Whether the *Daubert* factors are pertinent to assessing reliability in a particular case depends on the nature of the issue, the expert's particular expertise, and the subject of his or her testimony. *Travelers Property & Casualty Corp. v. General Electric Co.*, 150 F. Supp. 2d 360, 364 (D. Ct. 2001) . No single factor is necessarily dispositive of the reliability of a particular expert's proposed testimony, and a review of case-law after *Daubert* demonstrates that rejection of expert testimony is the exception rather than the rule. *Travelers Property & Casualty Corp.*, 150 F. Supp. 2d at 364, <u>citing</u> Advisory Committee Notes, 2000 Amendments, Federal Rule of Evidence 702.

In some cases, the reliability of an expert witness may be based upon his or her personal knowledge or experience. *Kumho Tire,* 526 U.S. at 156. Thus, testimony from

cause and origin investigators, based on their training, knowledge and experience, has been deemed to be reliable under *Daubert* standards.  See e.g. *United States v. Black Wolf*, 1999 U.S. Dist. LEXIS 20736 (D.S.D. December 7, 1999), attached as Exhibit "A". In that case, the government's cause and origin investigator was challenged on *Daubert* grounds where the expert concluded that an accelerant was used to start a fire.  The court permitted the testimony, and in its discussion at page 11, noted that:

> These factors [the Daubert factors], while perhaps pertinent, are not particularly helpful in analyzing whether Carlson's opinions and conclusions would assist a jury in deciding this case….He does not seek to offer testimony about an untested novel concept such as might be found in a case involving presentation of purely cutting-edge scientific testimony.  Instead, he proposes to testify based on his vast fire investigation experience as to how and where the fire began.  Thus, whether Carlson's proffered expert opinions have been subject to peer review, whether there is a known error rate and whether his theory or technique enjoy general acceptance within relevant scientific community are not particularly appropriate and useful considerations, especially in a case such as this one where orthodox scientific methodology is involved….

Other courts ruling upon the admissibility of cause and origin testimony have reached similar conclusions.  A cause and origin expert's proposed testimony has generally been deemed reliable if the investigation has been performed in accordance with a recognized methodology such as NFPA 921, which involves a process of elimination of potential ignition sources and identification, even if circumstantially, of a credible ignition scenario.  See, generally, T*ravelers Property & Casualty Corp. v. General Electric Co., supra,* 150 F. Supp. 2d at 366-67; *Allstate Insurance Company v. Hugh Cole Builder, Inc.*, 137 F. Supp. 2d 1283 (M.D. Al. 2001); *Abu-Hashish v. Scottsdale Insurance Company*, 88 F. Supp. 2d 906 (N.D. Ill. 2000).

Thus, in *Travelers Property & Casualty Corp. v. General Electric Co., supra*, the court permitted expert testimony on cause and origin from plaintiff's expert even though the expert did not test his theory experimentally, because the investigation was performed in accordance with the principles of NFPA 921. 150 F. Supp. 2d at 366-67.

In *Travelers*, Machnicki issued a three page report purporting to study and analyze twenty-three different fires alleged to have been caused by design defects in certain General Electric clothes dryers. In the report, he opined that the design of the dryers permitted the accumulation of combustible lint, which ignited, causing the fires. GE moved to exclude Machnicki's testimony under *Daubert*. Following an evidentiary hearing, the court viewed Machnicki's qualifications, his report, and his investigation. After terming his three-page expert report "woefully inadequate," 150 F. Supp. 2d at 365, the court nonetheless ruled that, given Machnicki's experience, knowledge and training, the methodology relied upon by Machnicki, i.e. analyzing burn patterns in the dryers and then ruling out potential alternative explanations for the fire (nearly the same methodology applied in this case by Mr. Profka), was sufficient to meet the *Daubert* threshold of admissibility. 150 F. Supp. 2d at 366.

In another case, *Allstate Insurance Company v. Hugh Cole Builder, Inc., supra*, the court considered whether to permit the cause and origin testimony of an expert who was expected to testify that heat alleged to have been conducted by a galvanized pipe adjacent to a fireplace caused wood framing to ignite. Defendant challenged plaintiff's expert's proposed testimony under *Daubert*, arguing that the expert's conclusions were unreliable. 137 F. Supp. 2d at 1287-1288.

The court in *Allstate* noted that although the expert never determined the ignition point of wood, the expert testified that he did not need to know the ignition temperature of wood because "there was nothing else that could produce the heat to cause the fire." *Id*. at 1288.  He further testified that he was aware that heat conducted through a pipe could cause fires because of past experience in fire investigation.  *Id*.  Finally, the expert testified that he reached his conclusions on the basis of his education and experience.  *Id.* Based on all of the foregoing, the court rejected the defendant's contentions and permitted the expert to testify, 137 F. Supp. 2d at 1289:

> In sum, the court finds that Boyer's theory that heat conducted through a metal pipe could ignite wood in contact with the metal pipe is a product of reliable principles and methods.  Although the court finds that Boyer's test does not support his theory, the court finds that Boyer's education and experience, his discussions with other experts, and especially, the discussion of conductivity in NFPA 921 established that Boyer's testimony is a product of reliable principles.

Next, defendant challenged that the expert's opinions were backed by sufficient facts or data.  Rejecting this contention, the court in *Allstate* noted that the role of Rule 702 of the Federal Rules of Evidence was not to decide facts.  *Id.*  Moreover, the court noted that even though the best evidence of what caused the fire had been destroyed by the fire itself, the expert was permitted to reach his conclusions by circumstantial evidence, i.e. explaining why no other alternate explanation accounts for the fire.  *Id.* at 1290.  Reflecting on contrary evidence i.e. evidence of other potential causes argued by defendant, the court noted that "even though this circumstantial evidence may undermine Boyer's testimony, Boyer has presented sufficient facts to support his opinion."  *Id.*, citing *Jones v. Otis Elevator Company*, 861 F.2d 655, 663 (11th Cir. 1988) ("the

weaknesses in the underpinnings of the expert's opinion go to its weight rather than its admissibility").

Finally, the court in *Allstate* considered the defendant's challenge to the expert's opinion in light of the fact that he had not fully eliminated the possibility of a large gas leak as a cause of the fire.  *Id.* at 1291.  The court rejected this challenge, ruling that the fact that the expert was unable to eliminate a large gas leak went to his credibility, rather than the admissibility of his testimony, in light of the fact that his proposed testimony was otherwise reliable.  As the court explained, *Id.* at 1291:

> Although Boyer did not eliminate a large gas leak as a possible cause of the fire, Boyer's conductivity theory remains reliable.  As required by Rule 702, Boyer has not rested his opinion simply on his authority as an expert, rather he relies upon his experience, explains how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts.
>
> Moreover, the fact that a large gas leak remains uneliminated as a possible cause of the fire goes to the weight rather than the admissibility Boyer's testimony.

Citing *Ambrosini v. Labarraque*, 322 U.S. App. D.C. 19, 101 F.3d 129, 140 (D.C. Cir. 1996), cert. denied, 520 U.S. 1205, 117 S. Ct. 1572, 137 L. Ed. 2d 716 (1997) (holding that the fact that several possible causes for a fire might remain uneliminated goes to the weight rather than the admissibility of the expert's testimony).

## III.    **ARGUMENT**

Plaintiffs' Motion in Limine attempts to exclude the expert testimony of Alex Profka based on the reliability and fit portions of the restrictions established by the Third Circuit in *Paoli*.  While the plaintiffs have not challenged Mr. Profka's qualifications,

those qualifications are essential to the Court's review of his methodology because, as the case law cited above shows, an expert's experience is relevant to the reliability of his methodology.  Mr. Profka's Curriculum Vitae is attached to Mr. Profka's report which is attached as Exhibit "B".  As you can see from Mr. Profka's CV he was a State Fire Marshal for the Pennsylvania State Police from 1996 to 1991 and investigated in excess of 900 fires in that capacity.  Since 1991 Mr. Profka has been employed with Bieber and Associates as a Fire Cause and Origin expert and has been involved in over 1,000 fire scene investigations in that capacity.  Mr. Profka has also been an instructor at courses and seminars on arson detection and investigation from 1977 through 1998.

## A.     <u>METHODOLOGY</u>

The methodology that Mr. Profka used in the fire investigation in this matter is the same methodology that Mr. Profka has used throughout his 27 years of experience. After receiving his assignment from Mark Allen, Mr. Profka proceeded to the property and conducted an exterior examination of the building.  <u>See</u> Profka N.T.pg.18: 7-12 attached as Exhibit "C".  Mr. Profka then conducted an internal examination of the building and based on the degree of fire damage concluded that the fire had started in the closet. Profka N.T. pg.18: 19-pg.20:-14.  As Mr. Profka examined the property he also created a photographic record. Profka N.T. pg.20: 15-pg. 21:-8.  Mr. Profka then examined the area of origin in the closet to determine potential sources of ignition.  After examining all of the electrical sources in the area of the fire he saw nothing he felt could contribute to the fire.  Profka N.T. pg. 30-31.  Mr. Profka did observe blistered tiles in the vicinity of the water heater in the closet which based on his 27 years of experience is consistent with the presence of a flammable liquid.  Profka N.T. pg.29: 18-25.  Mr.

Profka then used a TIF 8800 combustible gas detector on the area of the blistered tiles but no hydrocarbons were detected by this equipment.  Profka N.T. pg. 30:8-11.

Because Mr. Profka is not an electrical engineer and he wanted to be certain of his assumptions regarding the electrical sources of ignition he retained an electrical engineer, Mr. Clifford Patton to conduct an independent examination of all potential electrical sources for ignition in the area of the closet.  Profka N.T. pg.24: 1-3.  Mr. Patton concluded after his examination that there were not any electrical causes for the fire. Profka N.T. pg.26: 5-8.

After ruling out all accidental sources of ignition, Mr. Profka concluded that the source of ignition had to be man made. Profka N.T. pg.31: 12-17.  However, even though Mr. Profka had ruled out all accidental causes he stilled retained an open mind as to the cause of the fire.  Profka N.T. pg.31: 21-25.  In order to complete his investigation Mr. Profka interviewed Mr. Hopkins to determine anything that was placed in that closet could have been a source of the fire.  Profka N.T. pg.31: 22-25.  In his interview with Mr. Hopkins, Mr. Profka tried to determine whether Mr. Hopkins may have placed or discarded into the closet i.e., smoking materials, cigarettes or anything else which could have been the source of the fire.  Profka N.T. pg.32: 3-12.  Mr. Hopkins told Mr. Profka that there was nothing he placed in the closet which could have been an accidental source of the fire.  Profka N.T. pg.32: 10-21. Based on all of the evidence that Mr. Profka had obtained during his exterior and internal examinations of the property, his determination that the area of origin was the closet, his elimination of any electrical or other accidental sources of ignition Mr. Profka determined based on his 27 years of experience that the fire was intentionally set.  Profka N.T. pg.33: 7-14.

Mr. Profka also interviewed Mr. Giardina, a neighbor of Mr. Hopkins. According to Mr. Giardina, Mr. Hopkins' car was still at his residency as late as 1:45 p.m. Profka N.T. pg.33: 15-19. The fire in this matter was reported to the fire department at approximately 2:30 p.m. Mr. Profka also spoke with the State Fire Marshal, Trooper Dan Balliet, Profka N.T. pg.22: 4-7, and reviewed the fire report of Mr. Tom Zoshak, the Chief of the local fire department. Profka N.T. pg.27: 2-6. From these sources Mr. Profka learned that the property was locked and secured when the fire department arrived.

Mr. Profka's opinion is not based on any one aspect of his investigation, but is based on the totality of all of the evidence that he observed, including, the timeframe, the blistering tiles, the evidence of the fire spread, the absence of any accidental means of causing the fire and the need for forcible entry made by the fire department all led him to conclude this was an intentionally set fire. Profka N.T. pg. 40:10-15.

The Plaintiff's Motion attacks Mr. Profka's methodology by arguing that there are five specific flaws in his methodology which render his opinion unreliable. However, these items that the Plaintiff's have identified actually go to the weight of Mr. Profka's testimony do they affect the reliability of his testimony. In fact, Plaintiff's own expert followed the exact same methodology as Mr. Profka in investigating this fire and based his conclusions on all or some of the evidence that Mr. Profka relied on. The only real difference between these opinions are that each expert reached a different conclusion based on their examinations. The fact that plaintiff's expert reached a different conclusion does not make the methodology Mr. Profka used unreliable. In fact, if Mr. Profka's methodology is unreliable then Plaintiff's expert's own methodology is

unreliable.  Both the Plaintiff's expert and Mr. Profka are experienced Fire Cause and

Origin Investigators who base their methodology and opinions on their vast experience

and practice.  While, Plaintiff's expert may take issue with some of Mr. Profka's methods

and/or conclusion does not rise to the level required to reject Mr. Profka's methodology

as unreliable.

     In support of their argument that Mr. Profka's methodology is unsound and his

conclusions are not supported by "good grounds" the Plaintiffs set forth five (5) separate

bases' for their argument.  While Plaintiffs attempt to argue and characterize each of

these five (5) points as deficiencies in the methodology used by Mr. Profka, they are

really more criticisms of Mr. Profka's interpretation of the facts and his conclusions

based on those facts and go to the weight of his testimony.  As the Supreme Court in

*Daubert* instructed "vigorous cross examination, presentation of contrary evidence and

careful instruction on the burden of proof are the traditional and appropriate means of

attacking shaky but admissible evidence".  *Daubert* 509 U.S. at 596.  While Defendant

does not admit that Mr. Profka's conclusions are shaky, it cites this passage from *Daubert*

to highlight the fact that merely because an expert opinion is assailable and subject to

criticism or contradiction does not make it inadmissible under F.R.E. 702 or *Daubert*.

     Plaintiffs' first attack on Mr. Profka's opinion is their claim that he failed to

employ the proper scientific methods to examine the floor for the presence of flammable

liquids.  Mr. Profka testified in his deposition that his conclusion that a flammable liquid

was present in the fire scene was due to the blistering of the floor tiles.  Mr. Profka stated:

> But as long as the flame is hot enough to blister the tiles, in my
> findings and the investigations that I have conducted through
> the years, I have found that flammable liquid is the only thing

124063-1

that is going to bubble those tiles up, not just burning paper or
clothing that might be in the area.

Profka N.T. 30:1-7 attached as Exhibit "C".

Furthermore, Mr. Profka did conduct further testing of the area using a TIF 8800

combustible gas detector.  In his report, Mr. Profka states:

However, there was no evidence of a flammable liquid detected
by this investigator during his on-scene examinations, with the
combustible gas detector being employed on 05 September
2001, with negative results.  Therefore, no samples were taken
of the floor area, due to the negative reading with the TIF 8800
combustible gas detector.

Profka Report, Page 4 attached as Exhibit "B".

As Mr. Profka has clearly testified, he determined the presence of a flammable

liquid based on the physical conditions of the floor tiles and his experience from prior

investigations. Because Mr. Profka's determination of the presence of a flammable liquid

was based on the fire burn patterns which existed on the floor tile he did not find it

material that he did not detect hydrocarbons using his combustible gas detector.

Therefore, it is unclear how any further scientific testing could have altered Mr. Profka's

opinion.  Had more in depth scientific testing been done and still confirmed the on-scene

findings that there was no remaining evidence of a flammable liquid that would not have

changed Mr. Profka's opinion based on the observable burn pattern which he has opined

can only have been created by the presence of a flammable liquid.  As the Third Circuit

has found "the test of admissibility is not whether a particular scientific opinion has the

best foundation or whether it is demonstrably correct.  Rather, the test is whether the

'particular opinion is based on valid reasoning and reliable methodology' ".  *ODDI v.*

*Ford Motor Company*, 234 F.3d 136, 145-146. (3rd Cir. 2000).  As stated above, Mr.

Profka has set forth a valid reasoning and reliable methodology for this opinion.

The Plaintiffs next attack on Mr. Profka's opinion is that it is not reliable because

he is not honest in reporting the facts.  Plaintiffs argue that Mr. Profka characterizes Mr.

Hopkins as a liar.  The section of Mr. Profka's report quoted in Plaintiffs' Motion and

Memorandum states:

> The report by Mr. Schneiders discusses the fact that the insured,
> Mr. Hopkins, was a smoker, and was therefore, not truthful with
> this investigator, or during his deposition, that he did not place
> any smoking material into the storage area, where this fire had
> its inception.  The type of fire that occurred in the storage area,
> next to the water heater, as described by this investigator, was a
> fire that was intentionally set.  The tiles that were blistered in
> the area were not caused by anything other than a flammable
> liquid, in the opinion of this investigator.

Plaintiffs' counsel in an attempt to attack the reliability of Mr. Profka's report has

mischaracterized Mr. Profka's statements.  Mr. Profka was merely reporting that it was

Mr. Schneiders who was calling into question Mr. Hopkins' truthfulness.  As Mr. Profka

testified in his deposition:

> Ponziano:  Q.    Okay.  Did you interview Mr. Hopkins?
>
> Profka:    A.    I subsequently did.
>
>            Q.    And what, during Mr. Hopkins, interview,
>                  led you to believe that this was something
>                  intentional, instead of something that
>                  happened by accident?
>
>            A.    Well in normal conditions, in a place such as
>                  a closet, people do put trash bags or garbage
>                  bags or have a garbage can or trash
>                  receptacle in the closet.  I went over that
>                  with him pretty emphatically.  Did you
>                  discard any smoking material or cigarettes
>                  or anything into the closet?  No.

> I can recall him telling me it was by the door
> going to the outside. He said that he did not
> put anything into the closet. So that would
> have been the only source, in my opinion,
> that could have been responsible for the fire.
> And that did not occur, according to Mr.
> Hopkins' own words, when I took a
> statement from him.

Profka N.T. 32:1-21, attached as Exhibit "C".

It was Mr. Schneiders in his report whom states:

> 12.    Mr. Hopkins recorded interview (September 4, 2001)
> and statement under oath (February 5, 2002) including
> information that he was not in the closet on the day of
> the fire, that he did not smoke in the closet. . . are
> explainable and (based on my years of experience with
> these type of fires) not a typical statement of a
> homeowner/smoker who home has been damaged by
> fire; and

Schneiders Report, Pg. 6, attached as Exhibit "D".

Therefore, at no time was it Mr. Profka who was calling into question the veracity of Mr.

Hopkins but Mr. Schneiders who chooses to disregard the veracity of Mr. Hopkins'

sworn testimony.

Furthermore, Mr. Profka did not in any way attempt to hide the fact that Mr.

Hopkins was a smoker as he attached Mr. Hopkins' complete recorded statement as an

exhibit to his report. The fact that Mr. Hopkins was a smoker became immaterial to Mr.

Profka's opinion once Mr. Hopkins stated to him that he did not smoke in the area of the

closet nor did he discard any trash or other material which may have contained discarded

smoking material. Mr. Profka also ruled out careless smoking during his physical

examination.

Plaintiffs next attack on Mr. Profka's methodology is that his

reliance upon eyewitness testimony renders his methodology unreliable. However, Plaintiffs' counsel improperly characterizes eyewitness testimony as second-hand anecdotal experiences. Plaintiffs' counsel attempts to compare first-hand eyewitness testimony with clinical opinions and case reports used by medical experts in their testimony regarding a medical diagnosis. The factual argument and cases cited by Plaintiff relate entirely to the use of these clinical opinions and case reports and do not address nor are they on point with the use of first-hand eyewitness testimony by investigators such as Mr. Profka. Furthermore, Federal Rule of Evidence 703 permits experts to rely on hearsay testimony so long as that hearsay is of the kind normally employed by experts in that field. *In re: TMI Litigation*, 193 F.3d 613, 697 (3rd Cir. 1999) *see also Stevens v. Cessna Aircraft Company*, 634 F.Supp. 137, 142-143 (Court permitted expert to rely upon hearsay statements taken during his investigation). Fire cause and origin investigators such as Mr. Profka routinely rely on interviews and statements taken from others in making their determination on the cause and origin of a fire. In fact, plaintiff's expert also conducted interviews du8ring his investigation.

Plaintiffs next argued that Mr. Profka's methodology is unreliable by claiming that his testing was grossly incomplete. Plaintiff's basis for this attack is the testimony by Mr. Schneiders that Mr. Profka should have taken a sample of the floor tile to be tested at a lab. However, as has been stated above, once Mr. Profka received a negative result from his on-scene test, there was no need to remove any tile for further testing. Mr. Profka's determination that a flammable liquid was present is based completely on his visual observations of the blistering tile. The fact that he obtained a negative hydrocarbon test did not, and would not, change his opinion.

Finally, plaintiff claims that Mr. Profka failed to consider significant data sources. They first claim that Mr. Profka failed to consider Mr. Schneiders' report and the results of the police and fire department investigation. However, the plaintiff is well aware that Mr. Profka testified at his deposition that while he had not received the State Fire Marshal's report he spoke to Trooper Balliet regarding his findings and he reviewed the Fearnot Volunteer Fire Department report and Mr. Schneiders' report prior to preparing his final report and that nothing he saw in any of those reports caused him to change his opinion.

Plaintiff's also allege that Mr. Profka failed to conduct a thorough investigation by not examining a can found by Mr. Schneiders, which Mr. Schneiders believes came from the area of origin. However, Mr. Profka, as cited above, did a thorough scene examination himself, and as such, anything that Mr. Schneiders found subsequent to Mr. Profka's examination was irrelevant.

Lastly, the plaintiff's allege that Mr. Profka ignored his own test results which showed no presence of hydrocarbons. However, as has been discussed above at length, Mr. Profka based his opinion on the presence of a flammable liquid based on his visual observations of the blistering tile and, therefore, he did not ignore his test results, but merely discounted the lack of any hydrocarbons that remained after the fire and firefighting efforts.

## B.    PAOLI'S THIRD REQUIREMENT OF "FIT"

Plaintiff's have argued in their Motion that Mr. Profka's opinion does not fit the third Paoli requirement that the testimony "fit". However, plaintiff mischaracterizes the requirement of "fit". The third requirement of Paoli merely requires that the expert's

testimony will assist the trier of fact in reaching a conclusion on a relevant factor in the case. *Schneider v. Fried*, 320 F.3d at 406.   In the present matter, it is the burden of the defendant to prove by a preponderance of the evidence that the plaintiff, Mr. Hopkins, started the fire at his property.  One of the pieces of evidence that must be considered by the jury is whether the fire was incendiary in nature.  As is clear from Mr. Profka's testimony and report, his opinion goes directly to whether this fire was incendiary in nature.  Therefore, Mr. Profka's opinion is squarely within the "fit" requirement created by the *Paoli* Court.

## IV.  <u>CONCLUSION</u>

Plaintiff's challenge to Mr. Profka's expected testimony should be rejected.  His investigation was performed in accordance with a recognized methodology practiced by Mr. Profka after 27 years of experience in the fire cause and origin industry,  and a methodology followed and recognized by plaintiffs expert.  Therefore, Mr. Profka's testimony survives critical analysis under *Daubert* and *Paoli*.   In the alternative, defendant should be provided an opportunity at a *Daubert* hearing prior to or at the time of trial to establish a more complete factual record  upon which the Court's decision might be based. *Padillas v. Stork-Gamco, Inc.*, 186 F.3d 412 (3rd Cir. 1999).

Respectfully submitted,

HECKER BROWN SHERRY AND JOHNSON


By: _____
　　　　　Jonathan R. MacBride

**CERTIFICATE OF SERVICE**


I, Jonathan R. MacBride, Esquire, hereby certify that a true and correct copy of the foregoing *Response of Defendants to Plaintiffs' Motion in Limine and Memorandum of Law in Support Thereof to Preclude Expert Testimony of Alex Profka* have been served on the following counsel of record by first-class mail with postage pre-paid thereon on the 16th day of October, 2003.


Robert B. Ponziano, Esquire
One Greenwood Square, Suite 140
Bensalem, PA  19020


HECKER BROWN SHERRY AND JOHNSON


By: _____
　　　　Jonathan R. MacBride
　　　　Attorney for Defendant

124063-1